Robert T. Stewart (Nevada Bar No. 13770)
**FOLEY & LARDNER LLP**
95 South State Street, Suite 2500
Salt Lake City, Utah 84111
Tel: (801) 401-8900
Fax: (385) 799-7576
rtstewart@foley.com

*Attorney for Plaintiff Advanced Solution LLC*

Adam Fulton (Nevada Bar No. 11572)
**JENNINGS & FULTON, LTD**
2580 Sorrel Street
Las Vegas, NV 89146
Phone: (702) 979-3565
Fax: (702) 362-2060
afulton@jfnvlaw.com

*Designated Nevada counsel only for Plaintiff pursuant to LR IA 11-1(b)(2)*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ADVANCED SOLUTION LLC,<br><br>Plaintiff,<br><br>vs.<br><br>NEW HORIZON MEDICAL SOLUTIONS, LLC,<br><br>Defendant. | Case No. 2:26-cv-00958-APG-EJY<br><br>**PLAINTIFF ADVANCED SOLUTION LLC'S MOTION TO STRIKE OR, IN THE ALTERNATIVE, TO DISMISS UNDER RULE 12(b)(6)** |
| NEW HORIZON MEDICAL SOLUTIONS, LLC,<br><br>Counterclaimant,<br><br>vs.<br><br>ADVANCED SOLUTION, LLC,<br><br>Counterdefendant. | |
| NEW HORIZON MEDICAL SOLUTIONS, LLC<br><br>Third Party Plaintiff,<br>vs.<br><br>OMEZA HOLDINGS, INC.,<br><br>Third Party Defendant. | |

Advanced Solution, LLC moves to strike New Horizon Medical Solutions, LLC's counterclaims because they are untimely. *See* ECF No. 11 at 8–16, New Horizon's Counterclaim. Alternatively, Advanced Solution moves to dismiss the counterclaims because they fail to state a claim under Rule 12(b)(6).

1

## I.    <u>INTRODUCTION</u>

New Horizon's deadline to file its answer and compulsory counterclaims was April 29. But the counterclaims were not filed until May 21.  Accordingly, the Court should strike the untimely counterclaims, which will be highly prejudicial to Advanced Solution if not stricken.

In addition to being untimely, all five counterclaims fail to state a claim under Rule 12(b)(6):

1. The **breach of contract** claim is not predicated on a breach of a specific contractual obligation.  Instead, it is based on an alleged breach of vague, generalized provisions requiring Advanced Solution to act professionally.

2. The **implied covenant** claim is impermissibly duplicative of the breach of contract claim.  Both claims are based on the same conduct.  Further, the implied covenant claim fails to allege literal compliance with the contract and assumes contractual duties that are not contemplated by the contract.

3. The **intentional interference with contractual relations** claim fails to identify specific facts about the contractual relations to which Advanced Solution allegedly interfered.  The specific providers, contracts, and interfering statements are never identified.  Further, the claim fails to allege that Advanced Solution intended to induce a breach or caused actual disruption.

4. The **conversion** claim fails to allege specifically identifiable funds.

5. The **NDTPA** claim sounds in fraud but fails to satisfy Rule 9(b)'s heightened pleading standard.  The claim does not identify the who, what, when, where, or how of any alleged misrepresentation.

Because the counterclaims fail to state a claim, the Court should dismiss the counterclaims under Rule 12(b)(6).

/ / /

## II.    FACTUAL BACKGROUND

**1.    New Horizon filed its counterclaims on May 21, which is 43 days after New Horizon was served with the complaint and summons on April 8.**

On **April 8, 2026**, Advanced Solution's process server personally served the complaint and summons on New Horizon's registered agent, United Agent Group, at the registered agent's office at 112 North Curry Street, Carson City, Nevada 89703.  *See* ECF No. 7 (Proof of Service); Ex. 1 at ¶ 2 (Decl. Robert Stewart).

On **April 9**, Advanced Solution filed the proof of service with the Court.  *See* ECF No. 7.

On **April 22**, Advanced Solution's counsel received a letter from CSC, dated April 13.  *See* Ex. 1 at ¶ 3; Ex. 2 (CSC Letter).  CSC appears to be a global registered agent company that, for its Nevada office, shares an office with United Agent Group at 112 North Curry Street, Carson City, Nevada 89703.  *See* Ex. 1 at ¶ 4.  In the letter, CSC stated that it was rejecting service because, amongst multiple possible reasons, CSC was not New Horizon's registered agent.  *See* Ex. 2.

Advanced Solution was surprised by CSC's letter because service had been directed to New Horizon and its registered agent, United Agent Group, not CSC.  Advanced Solution's counsel investigated the matter by speaking with the process server, speaking on the phone with a representative of CSC, and trying to speak on the phone with United Agent Group, which would not accept phone calls about service-of-process questions.  *See* Ex. 1 at ¶ 5.  Advanced Solution's counsel learned that multiple registered agent companies, including United Agent Group and CSC, appear to use the same office and potentially even the same receptionist at the office in Carson City located at 112 North Curry Street.  *See* Ex. 1 at ¶ 6.  According to online information and maps, it appears that that office was a small home that has been converted into an office.  *See* Ex. 1 at ¶ 7.  Upon learning this information, it appeared to Advanced Solution's counsel that United Agent Group's receptionist had, upon receiving the summons and complaint on April 8, forwarded the complaint and summons to CSC.  *See* Ex. 1 at ¶ 8.

On **April 28**, as a courtesy, Advanced Solution had its process server personally deliver a letter to United Agent Group's office in Carson City.  *See* Ex. 3.  The letter enclosed courtesy

copies of the previously served complaint, the previously served summons, and the previously filed proof of service.  *Id.*  The letter stated that service had occurred on United Agent Group's office on April 8 and Advanced Solution had subsequently received a rejection letter from CSC:

> My firm and I represent Advanced Solution LLC in the above-captioned case.  I write concerning the summons and complaint (the "service documents") in the above-captioned case that were served on April 8, 2026, on your office at 112 North Curry Street, Carson City, NV 89703, in your role as the Nevada registered agent for New Horizon Medical Solutions LLC.  As a courtesy, I am enclosing the certificate of service.
>
> My office recently received a rejection of service of process letter from CSC, possibly concerning the above-referenced service that occurred on your Carson City office on April 8, 2026.  It appears that you share your Carson City office at 112 North Curry Street with CSC.  In the event that your office forwarded the service documents to CSC rather than New Horizon Medical Solutions LLC, please be advised that your office appears to have done so in error.  The summons is directed to New Horizon Medical Solutions LLC, for which United Agent Group is the registered agent, not CSC.

*Id.*

On **April 30**, also as a courtesy, Advanced Solution had its process server personally deliver the same letter, complaint, summons, and certificate of service to New Horizon's corporate office in Las Vegas.  *See* Ex. 4.

On **May 21**, New Horizon filed its answer and counterclaims.  *See* ECF No. 11.  May 21 is 43 days after service occurred on April 8.

New Horizon has not sought or obtained an extension to file a response to the complaint or to file counterclaims.

**2.     The counterclaim's allegations.**

According to New Horizon's allegations,[1] New Horizon and Advanced Solution executed the "Cellular Tissue Product Distributor Agreement" (the "Agreement") on or about December 27, 2024.  ECF No. 11 at 9, ¶ 4.  Under the Agreement, Advanced Solution acted as a non-

---

[1]  By accepting the allegations as true only for purposes of this motion, as is required at this Rule 12(b)(6) phase, *see Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017), Advanced Solution is not admitting the truth of any of New Horizon's allegations.  Advanced Solution disputes the merits of New Horizon's claims and allegations.

exclusive distributor and representative of New Horizon. *Id.* at 9, ¶ 6.

The Agreement states that Advanced Solution shall use its best efforts to market and sell New Horizon's products, perform its obligations in a professional manner and in accordance with the highest industry standards, and act in a manner that reflects favorably on New Horizon and its products. *Id.* at 9, ¶¶ 7, 9. The Agreement states that Advanced Solution shall not participate in "illegal, deceptive, misleading, or unethical practices"; shall not disparage New Horizon or its products; and shall not engage in practices "which may be detrimental" to New Horizon, its products, or the public interest. *Id.* at 11, ¶¶ 28–31. The Agreement states that Advanced Solution shall not interfere with or disrupt New Horizon's relationships with customers, clients, suppliers, and other business contacts. The Agreement states that Advanced Solution shall not take actions that could reasonably be expected to harm New Horizon's goodwill or business relationships. *Id.* at 11, ¶ 32.

Advanced Solution failed to perform its obligations in a professional manner in accordance with the highest industry standards and failed to perform its duties in a manner that reflected favorably on the products and good name and reputation of New Horizon. *Id.* at 9, ¶¶ 8, 10–11. At least one provider and possibly others mistakenly paid Advanced Solution instead of New Horizon for products supplied by New Horizon, and those providers are still obligated to pay New Horizon. *Id.* at 9, ¶ 12; *id* at 10, ¶¶ 13, 15. The mistaken payment was approximately $1 million, and Advanced Solution did not forward the payment to New Horizon and continues to hold such funds. *Id.* at 10, ¶ 13. No provision of the Agreement entitles Advanced Solution to receive payment directly from end-user purchasers, such as providers. *Id.* at 10, ¶ 14. Advanced Solution is only entitled to payment from New Horizon based on amounts actually collected by New Horizon, net of refunds, returns, discounts, and other deductions. *Id.*

Advanced Solution made statements to various providers concerning their payment obligations to New Horizon. *Id.* at 10, ¶ 16. Specifically, on information and belief, Advanced Solution told providers that they were only required to pay New Horizon for products that they purchased if they were reimbursed by Medicare to increase sales volumes. *Id.* at 10, ¶¶ 16–18. These statements are false, misleading, and in direct contradiction to the contracts between New

Horizon and the providers. *Id.* at 10, ¶ 17. Advanced Solution made these representations in order to boost its sales volumes, regardless of the risk and detriment to New Horizon. *Id.* at 10, ¶ 18. Advanced Solution caused certain providers to purchase substantial amounts of product without the providers intending to pay New Horizon unless Medicare reimbursed the providers. *Id.* at 10, ¶ 19. When Medicare did not pay or clawed back payment, the providers did not pay New Horizon. *Id.* at 10, ¶ 20.

Advanced Solution never informed New Horizon that various providers were not paying their invoices, were not capable of paying their invoices, and/or that New Horizon should reduce or cease sales to said providers due to their poor track record of paying, despite Advanced Solution's knowledge of the same. *Id.* at 10, ¶ 21. Advanced Solution's conduct led to large unpaid balances owed to New Horizon by more than twenty providers. *Id.* at 10, ¶ 22.

On information and belief, Advanced Solution marketed and sold New Horizon's products to providers it knew or should have known were not creditworthy or financially sound, and now New Horizon is in litigation with at least eleven of those providers. *Id.* at 10, ¶ 23; *id.* at 11, ¶ 24.

Advanced Solution encouraged providers to pay another manufacturer or to not pay New Horizon unless and until New Horizon paid Advanced Solution amounts that Advanced Solution claimed it was owed. *Id.* at 11, ¶ 26. Around the time Advanced Solution filed this lawsuit, several providers who had been making payments to New Horizon under agreed payment plans stopped doing so. *Id.* at 11, ¶ 27.

Based on these allegations, New Horizon pleads five counterclaims against Advanced Solution: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) intentional interference with contractual relations; (4) conversion; and (5) violation of the Nevada Deceptive Trade Practices Act. *Id.* at 12–15.

### III.    LEGAL STANDARD

**1.    Motion to strike untimely counterclaims.**

Under Rule 13(a), compulsory counterclaims must be pleaded in the responsive pleading. *See* Fed. R. Civ. P. 13(a)(1)(A). And under Rule 12, the responsive pleading must be served

within 21 days of service of the summons and complaint. *See* Fed. R. Civ. P. 12(a)(1)(A)(i).

"[A]n answer (or other pleading) filed beyond the time permitted by the Federal Rules of Civil Procedure may be 'stricken' as untimely if the pleader failed to obtain from the court an extension of time or leave to late-file the pleading." *Barefield v. HSBC Holdings PLC*, 2019 WL 918206, at *2 (E.D. Cal. Feb. 25, 2019) (cited with approval by *Admiral Ins. Co. v. Kabul, Inc.*, No. 2:22-CV-00177-CDS-NJK, 2024 WL 3640029, at *5 (D. Nev. Aug. 1, 2024)). "[C]ourts resolve motions to strike untimely cross/counterclaims under the framework set forth in Federal Rule of Civil Procedure 55." *Admiral Ins. Co.*, 2024 WL 3640029, at *5; *see also McMillen v. J.C. Penney Co., Inc.*, 205 F.R.D. 557, 558 (D. Nev. 2002) (explaining that a motion to strike an untimely response is equivalent to a motion for entry of default and that "[t]he filing of a late answer is analogous to a motion to vacate a default").

**2.     Motion to dismiss for failing to state a claim under Rule 12(b)(6).**

In considering a motion to dismiss under Rule 12(b)(6), the court takes all well-pleaded allegations of material fact as true and interprets the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, the court does not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017). To defeat a motion to dismiss, the plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.*

Rule 9(b) imposes an elevated pleading standard for claims sounding in fraud. *See* Fed. R. Civ. P. 9(b). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id.* The facts pleaded must provide the defendants "notice of the particular conduct" so that they can defend against the plaintiff's accusations "and not just deny that they have done anything wrong." *Bly-Magee v.*

*California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (cleaned up).  These facts must include the "who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (cleaned up).  So "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).

## IV.    ARGUMENT

**1.        The counterclaims should be stricken because they are untimely.**

Compulsory counterclaims must be filed within 21 days of service of the summons and complaint*.  See* Fed. R. Civ. P. 12(a)(1)(A)(i) (requiring the responsive pleading to be served within 21 days of service of the summons and complaint); Fed. R. Civ. P. 13(a)(1)(A) (requiring compulsory counterclaims to be pleaded in the responsive pleading).  Here, New Horizon did not file its compulsory counterclaims by that 21-day deadline.[2]  As detailed above, New Horizon's registered agent was served with the summons and complaint on April 8, so the 21-day deadline was April 29, but New Horizon did not file its counterclaim until May 21.

New Horizon may argue that it was served on April 30.  That is the date Advanced Solution's process server personally delivered the courtesy letter, complaint, summons, and certificate of service to New Horizon's corporate office in Las Vegas.  But, as detailed above, the delivery of the documents on April 30 was just a courtesy, as is stated in the letter: "I write concerning the summons and complaint (the 'service documents') in the above-captioned case that were served on April 8, 2026 . . . .  As a courtesy, I am enclosing the certificate of service." Ex. 4.

Because the counterclaims are untimely and New Horizon neither sought nor obtained an extension, the Court should strike the counterclaims.  "[C]ourts resolve motions to strike untimely cross/counterclaims under the framework set forth in Federal Rule of Civil Procedure 55." *Admiral Ins. Co.*, 2024 WL 3640029, at *5; *McMillen*, 205 F.R.D. at 558.  Under that

---

[2]  New Horizon acknowledges the counterclaims are compulsory, stating the "counterclaim arises out of the same transaction or occurrence as Plaintiff's Complaint pursuant to FRCP 13(a)."  ECF No. 11 at 8–9, ¶ 3.

framework, a court may excuse an untimely pleading for good cause. *See* Fed. R. Civ. P. 55(c). The good-cause analysis focuses on three factors: (1) whether the untimely party engaged in culpable conduct; (2) whether the untimely party had a meritorious claim or defense; and (3) whether excusing the untimely filing will prejudice the other party. *See Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004). The factors are considered disjunctively, and a court is free to find the absence of good cause if any of the three factors is present. *Id.*

Here, these factors demonstrate an absence of good cause by New Horizon.

### a) New Horizon is culpable because it received actual and constructive notice of the summons and complaint on April 8.

"If a party is legally sophisticated, the court may deem its conduct culpable if it has received actual or constructive notice of the filing of the action and failed to answer." *Bd. of Trs. of Teamsters Loc. 631 Sec. Fund for S. Nevada v. World Wide Exhibits, Inc.*, 770 F. Supp. 3d 1245, 1250 (D. Nev. 2025) (cleaned up and citing *Franchise Holding II, LLC. v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 925–26 (9th Cir. 2004)).

Here, New Horizon is legally sophisticated. According to its own pleading, New Horizon is a business that regularly enters commercial contracts, *see* ECF No. 11 at 9, ¶ 4; *id.* at 14, ¶ 56, and is experienced with and actively involved in commercial litigation. *See id.* at 11, ¶ 24 (alleging that New Horizon initiated litigation against 11 providers). And according to its online website, New Horizon does business with "healthcare providers across the United States," and New Horizon has a large leadership team that includes a CEO, COO, CCO, CFO, and general counsel. *See* Ex. 1 at ¶ 11.

Because New Horizon is legally sophisticated, its conduct is culpable because it received actual and constructive notice of the summons and complaint when its Nevada registered agent was served with the summons and complaint on April 8. *See Franchise Holding II, LLC.*, 375 F.3d at 926 ("If a defendant has received actual or constructive notice of the filing of the action and failed to answer, its conduct is culpable.") (cleaned up).

**b) New Horizon's counterclaims are not meritorious.**

A claim or defense is meritorious if it "at least has merit on its face." *Aristocrat Techs., Inc. v. High Impact Design & Ent.*, 642 F. Supp. 2d 1228, 1233 (D. Nev. 2009) (citing *Accu-Weather, Inc. v. Reuters Ltd.*, 779 F. Supp. 801, 803 (M.D. Pa. 1991)).

Here, New Horizon's counterclaims are not meritorious on their face. This is demonstrated in Advanced Solution's alternative motion to dismiss, which argues that all five counterclaims fail to state a claim under Rule 12(b)(6). Further, even if the counterclaims were meritorious on their face, that would only increase the weight of the third factor, which asks whether Advanced Solution will be prejudiced by the counterclaims if they are not stricken.

**c) Advanced Solution will be severely prejudiced if the counterclaims are not stricken.**

When this third factor is applied to situations where the defendant seeks to set aside a default that was entered because of an untimely answer, this factor considers whether "circumstances have changed since entry of the default such that a plaintiff's ability to litigate its claim is not impaired in some material way or if relevant evidence has become lost or unavailable." *Aristocrat Techs., Inc.*, 642 F. Supp. 2d at 1233 (cleaned up). That is because "[a] party's ability to pursue a claim can be prejudiced by loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *World Wide Exhibits, Inc.*, 770 F. Supp. 3d at 1254 (cleaned up).

But in situations where the untimely pleading is a counterclaim (as opposed to an answer), courts consider whether not striking the counterclaim will prejudice the plaintiff. *See Am. Fam. Mut. Ins. Co. v. Hayden*, No. 1:07CV0664-DFH-WGH, 2008 WL 4822533, at *8 n.4 (S.D. Ind. Nov. 3, 2008). A counterclaim, unlike an answer, affirmatively seeks a judgment and damages. In *Hayden*, the defendants filed both an untimely answer and an untimely counterclaim. *Id.* at *8. The counterclaim sought punitive damages and attorney's fees. *Id.* The court granted the motion to strike the untimely counterclaim because not striking it "would prejudice" the plaintiff, which would have to deal with the counterclaim and potential judgment and damages if the counterclaim was permitted to proceed. *Id.* at *8 n.4. As for the untimely

answer, the court denied the motion to strike that because, first, the plaintiff would not be prejudiced by the answer (which did not seek damages against the plaintiff) and, second, the defendants "would be severely prejudiced [if the answer were stricken] because the court would have to enter a default against the [defendants]." *Id.*

The same reasoning applies here. Advanced Solution does not seek the severe consequence of striking New Horizon's untimely answer. But that does not mean New Horizon should be permitted to bring untimely counterclaims against Advanced Solution that seek judgment, damages, and fees against Advanced Solution — all of which would be severely prejudicial to Advanced Solution.

In sum, because the three factors above show an absence of good cause by New Horizon, the Court should strike the untimely counterclaims.

**2.      If the Court does not strike the counterclaims as untimely, then the counterclaims should be dismissed for failing to state a claim under Rule 12(b)(6).**

        **a)  The breach of contract claim fails to identify a specific contractual obligation that was breached.**

To succeed on a breach of contract claim, the plaintiff must show four elements: "(1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages." *Laguerre v. Nevada Sys. of Higher Educ.*, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011). The claim must provide enough facts to make the alleged breach plausible, including facts identifying the contractual duty allegedly breached. *See Twombly*, 550 U.S. at 555–56; *Iqbal*, 556 U.S. at 678.

Courts dismiss breach of contract claims that fail to allege a breach of a specific contractual promise but instead rely on generalized standards of conduct. For example, the court in *Sweidy* ruled that the breach claim could not proceed because the alleged contractual obligations were only general promises to render services rather than "specific promise[s]" that could support a contract claim. *Sweidy v. Spring Ridge Academy*, 2023 WL 5278680, at *7–8 (D. Ariz. Aug. 15, 2023). The court explained that broad, generalized obligations are not enough — the claim must be based on nonperformance of a specific contractual undertaking. *Id.*

That is the problem here. New Horizon's breach claim relies on broad contractual

language that requires Advanced Solution to act "in a professional manner," "in accordance with the highest industry standards," and in a manner that "reflect[s] favorably" on New Horizon and its products. ECF No. 11 at 12, ¶¶ 39–40. But those are vague, generalized standards. They are not specific contractual obligations. New Horizon then points to an alleged bad act — receiving payments mistakenly sent by providers and then not forwarding those mistaken payments to New Horizon — and asserts that this violated the Agreement's broad conduct provisions. *Id.* at 12, ¶¶ 39–44. But this effectively uses the broad provisions as a catch-all provision for any alleged bad act, which is improper because it does not plausibly allege a material breach of a specific contractual duty. Further, the claim broadly alleges that Advanced Solution breached the broad conduct provisions "as set forth therein." *Id.* at 12, ¶¶ 39–40. This open-ended reference to every allegation in the pleading leaves Advanced Solution unable to determine which allegations constitute the alleged breach or breaches. For these reasons, the Court should dismiss the breach of contract claim.

### b) The implied covenant claim is duplicative of the breach of contract claim.

Nevada law implies a covenant of good faith and fair dealing in every contract. *See Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 808 P.2d 919, 922–23 (1991). "Where the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Id.* "This cause of action is different from one for breach of contract because it requires literal compliance with the terms of the contract." *Stebbins v. GEICO Ins. Agency*, No. 2:18-cv-00590-APG-GWF, 2019 WL 281281, at *2 (D. Nev. Jan. 22, 2019). At the same time, the implied covenant is "limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1252 (D. Nev. 2016) (quoting *McKnight v. Torres*, 563 F.3d 890, 893 (9th Cir. 2009)). Thus, although a party may pursue an implied covenant claim where the other party "unfairly frustrate[s] the other party's right to receive the benefits of the agreement actually made," the claim may not be used to impose additional obligations not contemplated by the operative

contract. *Leach Logistics, Inc. v. CF USA, Inc.*, 751 F. Supp. 3d 1087, 1106 (D. Nev. 2024). Further, an implied covenant claim cannot be based on the same conduct establishing a separately pleaded breach of contract claim. *Jimenez v. GEICO Gen. Ins. Co.*, 448 F. Supp. 3d 1108, 1113 (D. Nev. 2020) (quotation omitted); *see also Butler v. Progressive Direct Ins. Co.*, 772 F. Supp. 3d 1185, 1197–98 (D. Nev. 2025) (dismissing implied covenant claim that is based on the same allegations as the breach of contract claim).

The Court in *Jimenez* dismissed an implied covenant claim for, first, failing to allege literal compliance with the contract and, second, being based on the same conduct as the breach of contract claim. *See Jimenez*, 448 F. Supp. 3d at 1113. There the plaintiff alleged the insurer failed to comply with the terms of the policy "by, among other things, refusing Plaintiff full compensation under the uninsured/underinsured coverage provisions." *Id.* The Court ruled that the allegations did "not adequately allege literal compliance with the contractual terms required for breach of the implied covenant," and "the complaint uses the same allegations for both breach of contract and breach of the covenant of good faith and fair dealing." *Id.* The Court in *Butler* reached the same result for the same reasons. *See Butler*, 772 F. Supp. 3d at 1197–98.

Here, New Horizon's breach of contract claim alleges that Advanced Solution failed to perform professionally, failed to act in a manner that reflected favorably on New Horizon, and "accept[ed] payments from Providers and fail[ed] to forward the payments to New Horizon." ECF No. 11 at 12, ¶¶ 39–41. The implied covenant claim then improperly repeats similar same allegations, asserting that Advanced Solution acted "unfaithful to the purpose of the contract" by "accepting payments from Providers and failing to forward such payments to New Horizon," "instructing Providers not to pay New Horizon," and allowing nonpaying providers to continue purchasing product. *Id.* at 13, ¶ 50. Additionally, the allegations do not allege literal compliance with the Agreement. Rather, they allege noncompliance. That fails to state a claim for breach of the implied covenant. *See Jimenez*, 448 F. Supp. 3d at 1113; *Butler*, 772 F. Supp. 3d at 1197–98. For these reasons, the Court should dismiss the implied covenant claim.

The implied covenant claim also fails because it attempts to impose obligations not contemplated by the contract. New Horizon alleges, for example, that Advanced Solution acted

in bad faith by "allowing Providers that were not paying their invoices to continue to purchase product."  ECF No. 11 at 13, ¶ 50.  But the implied covenant cannot be used to rewrite the parties' bargain or insert duties not contemplated by the contract.  *See Shaw*, 201 F. Supp. 3d at 1252; *Leach Logistics*, 751 F. Supp. 3d at 1106.  If New Horizon wanted Advanced Solution to monitor provider payment performance, assess provider creditworthiness, or halt future sales to nonpaying providers, then those obligations needed to appear in the Agreement.  But they do not.  Thus, the Court should dismiss the implied covenant claim insofar as it is based on these obligations that are not contemplated by the contract.

### c)  The intentional interference claim lacks specificity.

A claim for intentional interference with contractual relations requires "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1154 (D. Nev. 2005) (*quoting J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 71 P.3d 1264, 1266 (2003)).  For the second and third elements, the claim must show the defendant intended to induce the third party to breach the contract, not just show that the defendant had knowledge of the contract.  *See J.J. Indus., LLC*, 71 P.3d at 1268; *see also Aliya Medcare Fin., LLC v. Nickell*, 156 F. Supp. 3d 1105, 1135 (C.D. Cal. 2015) (applying Nevada law and explaining that "[t]he defendant's mere knowledge of the contract is insufficient to establish that the defendant intended or designed to disrupt the plaintiff's contractual relationship; instead, the plaintiff must demonstrate that the defendant intended to induce the other party to breach the contract with the plaintiff").

Courts dismiss interference claims that are pleaded only in generalities.  The Court in *Motogolf* dismissed an intentional interference claim that alleged the defendants caused "at least one vendor" to not allow the plaintiff to sell certain merchandise but failed to allege "the specific contract or vendor relationships that were interfered with, the dates, or any other specific facts." *Motogolf.com, LLC v. Top Shelf Golf, LLC*, 528 F. Supp. 3d 1168, 1177 (D. Nev. 2021).  The Court also rejected the inference of wrongful interference where the allegations showed only that the defendants had communicated information to a vendor, not that they had acted with the intent

to induce breach.  *Id.*  Similarly, the court in *Hadnagy* dismissed a tortious interference claim that alleged "multiple of Plaintiffs' clients" terminated their agreements but did not specifically identify the clients or existing contracts.  *Hadnagy v. Moss*, No. 2:23-CV-01932-BAT, 2024 WL 1328568, at *9 (W.D. Wash. Mar. 28, 2024).

New Horizon's interference claim is no different.  It refers generally to "various Providers," "at least one Provider," and "more than twenty such Providers," but it never identifies the specific providers or specific contracts, and it never alleges that Advanced Solution knew of the contracts or intended to induce the providers to breach the contracts.  *See* ECF No. 11 at 9, ¶12; *id.* at 10, ¶¶ 16, 21–23; *id.* at 11, ¶¶ 24, 27.  These omissions are fatal.  *See Motogolf.com*, 528 F. Supp. 3d at 1177; *J.J. Indus., LLC*, 71 P.3d at 1268.

As for the allegations that Advanced Solution made certain statements to providers "in order to boost its sales volumes" and regardless of the risk to New Horizon, *see* ECF No. 11 at 10, ¶ 18, these allegations fail to plausibly allege an intent to induce breach.  New Horizon elsewhere alleges that Advanced Solution "is only entitled to payment from New Horizon based on the amounts actually collected by New Horizon."  *Id.* ¶ 14.  So that undermines the notion that Advanced Solution intended to cause providers to not pay New Horizon because provider nonpayment would reduce the collections from which Advanced Solution supposedly would be paid.

Finally, the interference claim fails to plausibly allege actual disruption.  The "actual breach or disruption" element requires "either an actual breach of a contract or a significant disruption of a contract rather than a simple impairment of contractual duties."  *Rimini St., Inc. v. Oracle Int'l Corp.*, 473 F. Supp. 3d 1158, 1185 (D. Nev. 2020).  New Horizon alleges only that some providers did not pay invoices, some stopped making payments under payment plans, and New Horizon had to sue some of them.  *See* ECF No. 11, ¶¶ 20–24, 27.  But New Horizon never ties any identified contractual disruption to any identified provider, contract, or statement by Advanced Solution.  That is insufficient.

Thus, the Court should dismiss the interference claim because it fails to allege the specific third-parties, specific contracts, intent, and actual disruption.

#### d) The conversion claim fails to identify specific earmarked funds.

A conversion claim must allege that "(1) the defendant committed a distinct act of dominion wrongfully exerted over the plaintiff's personal property; (2) the act was in denial of or inconsistent with the plaintiff's title or rights to the property; and (3) the act was in derogation, exclusion, or defiance of the plaintiff's title or rights in the personal property." *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1049 (Nev. 2000). "Although money cannot typically be the subject of a conversion claim, it can be where the money is identifiable, such as being set aside in a separate account or separately earmarked." *Dunham Tr. Co. as Tr. of Darrell N. Garmann Testamentary Tr. 2012 v. Wells Fargo Bank, N.A.*, No. 3:18-CV-00181-LRH-WGC, 2019 WL 489095, at *5–6 (D. Nev. Feb. 7, 2019) (citing *Hester v. Vision Airlines, Inc.*, 2011 WL 856871, at *3 (D. Nev. Mar. 9, 2011); *see also Naavajo Health Found.-Sage Mem'l Hosp., Inc. v. Razaghi*, No. 2:25-CV-834 JCM (NJK), 2025 WL 2939269, at *7 (D. Nev. Oct. 15, 2025) (same).

The Court in *Dunham Trust* dismissed the conversion claim where the plaintiff alleged the defendant bank converted trust funds by charging transaction fees on each of the trustee's improper withdrawals. *Dunham Tr. Co. as Tr. of Darrell N. Garmann Testamentary Tr. 2012*, 2019 WL 489095, at *5–6. The Court ruled that the claim had "not identified specific money at issue" because the allegedly converted funds were "an unidentifiable amount of money" charged across multiple transactions, and that was "not the same as a defendant taking money specifically earmarked for one purpose and using it for another." *Id.* at *6. The Court noted that the plaintiff did "not identify a specific dollar amount," "which . . . transactions were made in violation," or "any other information that would allow the Court to find that specific money is at issue." *Id.*

The same reasoning applies to New Horizon's conversion claim. The claim does not identify specific earmarked money. It just vaguely alleges that "for at least one Provider, and possibly others, the Provider paid Advanced Solution for products supplied by New Horizon, instead of paying New Horizon directly" in the "approximate amount of $1 million." ECF No. 11 at 9–10, ¶¶ 12–13. But that does not identify which provider made the payment, when the payment was made, the specific amount of the payment, or whether the funds were set aside in a

separate account or otherwise separately earmarked.  On this basis, the Court should dismiss the conversion claim.

### e)   The NDTPA claim fails to satisfy Rule 9(b).

New Horizon alleges that Advanced Solution violated the Nevada Deceptive Trade Practices Act by "[k]nowingly misrepresent[ing] the legal rights, obligations or remedies of a party to a transaction."  ECF No. 11 at 15, ¶¶ 71–72.  Specifically, New Horizon alleges that Advanced Solution "told various Providers that they were only required to pay New Horizon for the products that they purchased if they were reimbursed by Medicare."  *Id.* at 15, ¶ 71.

A claim of knowing misrepresentation sounds in fraud and, therefore, is subject to the heightened pleading requirements of Rule 9(b).  *See Drover v. LG Elecs. USA, Inc.*, No. 2:12-CV-510 JCM VCF, 2012 WL 5198467, at *1–2 (D. Nev. Oct. 18, 2012).  Under Rule 9(b), allegations of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009).  Rule 9(b) serves three purposes: "(1) providing defendants with adequate notice so they are able to defend the charge and deter plaintiffs from filing complaints as a pretext for the discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."  *Id.* (cleaned up).

New Horizon alleges on information and belief that Advanced Solution told "various Providers" they were required to pay New Horizon only if they were reimbursed by Medicare.  ECF No. 11 at 10, ¶ 16.  But New Horizon fails to identify who made the alleged statements, which providers heard them, when the statements were made, where they were made, or the precise content of the statements.  New Horizon likewise fails to allege facts showing how any identified provider relied on the alleged statements and how any particular injury resulted from the statements.  These omissions are not permitted under Rule 9(b).  *See Kearns*, 567 F.3d at 1124–25; *Drover*, 2012 WL 5198467, at *1–2.  Thus, the Court should dismiss the NDTPA claim under Rule 9(b).

### V.    CONCLUSION

For the foregoing reasons, Advanced Solution respectfully moves the Court to strike New Horizon's untimely counterclaims or, alternatively, dismiss the counterclaims for failing to state a claim under Rule 12(b)(6).

DATED: June 25, 2026                                          **FOLEY & LARDNER LLP**

                                                             */s/ Robert Stewart*
                                                             Robert T. Stewart
                                                             Peter Loh
                                                             *Attorneys for Plaintiff*


                                                             **JENNINGS & FULTON, LTD**
                                                             Adam Fulton
                                                             *Designated Nevada counsel only for Plaintiff*
                                                             *pursuant to LR IA 11-1(b)(2)*